IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNITED STATES OF AMERICA    )
                            )    CRIMINAL ACTION NO.
   v.                       )       2:14cr124-MHT
                            )           (WO)
RICHARD PIGGOTT             )
```

OPINION

Defendant Richard Piggott pled guilty to possession of child pornography. 18 U.S.C. § 2252A(a)(5). At his sentencing, the court accepted the parties' plea agreement, granted Piggott's motion for a downward variance, and imposed a sentence of 12-months and one-day imprisonment, with 12 additional months of inpatient treatment, followed by a lifetime term of supervised release. The court granted the variance on two bases. It recalculated the sentencing range for the heartland case by applying the sentencing framework laid out in United States v. Klear, 3 F. Supp. 3d 1298 (M.D. Ala. 2014) (Thompson, J.), and then considered factors that put this case outside the heartland. This

opinion explains why the court granted this variance.

## I. FACTUAL BACKGROUND

Piggott is a 34 year-old man who has always lived with his parents in central Alabama. Since a young age, he has had problems with his academic and social development.

Piggott has borderline intellectual functioning that can be traced, in part, to being born with an absence of oxygen supply to certain organs at birth (anoxia). He spent his childhood in special-education classes. His IQ remains in the mid-70s, and he currently spells, reads, and does math at a second- to fourth-grade level.

This borderline intellectual functioning led to severe issues for Piggott's emotional development. He has no friends and has never had a serious romantic relationship. He lives at home and is completely dependent on his parents for daily living. He is a recluse, spending an average day sitting on the couch,

smoking cigarettes, and watching television. He also has no job.

In the summer and early fall of 2009, an officer from the Alabama Department of Public Safety conducting a routine undercover internet investigation discovered child pornography on a Limewire account associated with Piggott. Based on this information, officers received a search warrant for Piggott's house.

At Piggott's house, the officers retrieved two computers (each with hard drives containing child pornography) as well as numerous CDs, DVDs, and floppy disks. Combined, these items had at least 292 images and 11 videos. Of these images and videos, a large number were pornographic images of young children. A small number of the images were sadistic or masochistic.

Piggott was charged in a one-count indictment with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5), to which Piggott pled guilty.

## II. CALCULATING THE HEARTLAND CASE

### A. Sentencing Guidelines Calculation

The United States Probation Office, applying the 2014 version of the United States Sentencing Commission Guidelines Manual, determined that Piggott's sentencing range under the Guidelines and applicable statutes is 97-to-120 months. According to the Guidelines, his Base Offense Level is 18. U.S.S.G. § 2G2.2(a). Piggott also qualifies for five Special Offense Characteristics, leading to a total 15-level increase as follows:

- Because some of the files on his computer portrayed pre-pubescent minors, he receives a two-level increase. U.S.S.G. § 2G2.2(b)(2).

- Because he distributed the files, albeit without monetary gain or distribution to a minor, he receives a two-level increase. U.S.S.G. § 2G2.2(b)(3)(F).

- Because some of the files on his computer contained

- sadistic, masochistic, or violent images, he receives a four-level increase. U.S.S.G. § 2G2.2(b)(4).

- Because he used a computer to possess and distribute the pornography, he receives a two-level increase. U.S.S.G. § 2G2.2(b)(6).

- Because he is deemed to have possessed more than 600 images, he receives a five-level increase. U.S.S.G. § 2G2.2(b)(7)(D).[1]

After a three-level adjustment downward for acceptance of responsibility, U.S.S.G. § 3E1.1(a) & (b), these enhancements resulted in a final offense level of 30. Because Piggott has only one criminal-history point, his Criminal History Category is I. A Criminal History Category of I and an offense level of 30 yields a sentence range of 97-to-121 months. Because the

---

1. Although Piggott had only 292 confirmed images of child pornography, he had 11 confirmed videos of child pornography. For purposes of the § 2G2.2(b)(7)(D) offense-level increase, each video is considered to have 75 images. See U.S.S.G. § 2G2.2, Commentary, n. 4.

maximum term of imprisonment under the statute is 120 months, the applicable Guidelines range is 97-to-120 months.  18 U.S.C. § 2252A(a)(5) & (b)(2).

Neither party objected to this calculation, although, as noted above, Piggott moved for a variance under the Klear framework, and the government agreed to its application.  The court now turns to application of that framework.


B. The Klear Framework

In Klear, this court rejected the Guidelines framework for child pornography as unmoored from the current reality of file sharing and unreasonable under the factors laid out in 18 U.S.C. § 3553(a).  In Klear, the court noted that, in 2012, the Sentencing Commission issued a report on non-production child pornography offenses.  3 F. Supp. 3d at 1303 (citing United States Sentencing Comm'n, Special Report to Congress: Federal Child Pornography Offenses (Dec. 2012)).  In the report, the Commission argued that,

6

because times have changed since the child pornography guidelines were created--specifically, that the rise of the internet has transformed how child pornography is typically obtained--the Guidelines are now anachronistic and do not adequately distinguish among offenders on the basis of the § 3553(a) factors.

In light of this report, and in an effort to better capture the § 3553(a) factors, the court created the following framework: (I) a Base Offense Level of 20; (II) up to nine additional levels for the content and size of the collection; (III) up to nine additional levels for engagement with other offenders; (IV) up to five additional levels for previous criminal sexual behavior with youth; and (V) two floater points if one category is particularly egregious.  Factors (II) and (III) are further broken down into subcategories, as detailed below.[2]

---

2. The court notes, as it did in <u>Klear</u>, that:

> "These subcategories are not mutually exclusive but serve as broad outlines

(continued...)

7

### C. Application of the Klear Framework

Because of the detailed nature of the framework, the court finds it best to provide a detailed breakdown of how each factor laid out in Klear applies to Piggott.

Below is a detailed breakdown of the four factors as they apply to Piggott's conduct:

(I)   **Base Offense Level**: 20[3]

---

> through which the court may capture the nature and content of the offender's behavior. Thus, if the offender had an inordinate number of violent or sadomasochistic images of children, such that the number was not just significant but it was evidence that that such was his focus, more than three (and perhaps even up to nine) levels might be appropriate for that aspect of his collecting behavior alone."

3 F. Supp. 3d at 1308. However, as will be shown, no such modifications are necessary here.

   3. In Klear, this court set a base level of 20 for child pornography cases, reasoning that, given the realities of modern computers, most defendants engage in possession, receipt, and distribution of child (continued...)

8

**(II)** <u>Content of Piggott's Collection and Nature of His Collecting Behavior</u>: +3

  (a) Representation of age of children indicative of intentional collection of child pornography.

    Possible Points: 3

    Actual Points: 1

    Reason: The government, probation, and Piggott all agree that one point was merited for this category. They based this view on a comparison to other child pornography cases.

  (b) Number of violent or sado-masochistic images of children.

    Possible Points: 3

    Actual Points: 1

    Reason: Piggott had a small number of such images.

  (c) Depth of engagement in child pornography.

---

pornography, and the average of the Base Offense Levels for those three offenses in the Guidelines is 20. <u>See Klear</u>, 3 F. Supp. 3d at 1308. In atypical situations, the court has started at a lower level. For example, in <u>United States v. Westbrook</u>, 2015 WL 470841, at *2 n.2, *3 (M.D. Ala. 2015) (Thompson, J.), the court started with a base level of 18 because, unlike here, the government and defendant agreed that the defendant had no intent to distribute and therefore that 18 was the appropriate base level.

        **Possible Points: 3**

        **Actual Points: 1**

        **Reason: Piggott's collection was not organized or meticulously categorized as to any factors such as gender or age. He also collected for only four months.**

**(III) <u>Engagement with Other Offenders</u>: +2**

  **(a) Impersonal distribution of child pornography (peer-to-peer).**

      **Possible Points: 3**

      **Actual Points: 2**

      **Reason: Piggott allowed access to his peer-to-peer account on Limewire on two occasions.**

  **(b) Personal distribution of child pornography.**

      **Possible Points: 6**

      **Actual Points: 0**

      **Reason: Piggott did not personally distribute child pornography.**

  **(c) Participation in online communities devoted to child sexual exploitation.**

      **Possible Points: 9**

      **Actual Points: 0**

      **Reason: Piggott did not participate in any**

      online communities devoted to child sexual exploitation.

(IV)    <u>Previous Criminal Sexually-Dangerous Behavior</u>: 0

      Possible Points: 5

      Actual Points: 0

      Reason: Piggott has no criminal history and no history of sexually-violent behavior.

(V)    <u>Adjustment for Multiple Factors</u>: 0

      Possible Points: 2

      Suggested Points: 0

      Reason: Piggott is not near the maximum in any category.

With this framework, then, Piggott's Base Offense Level of 20 is subject to a total increase of five levels, resulting in an Adjusted Offense Level of 25. Under the plea agreement, a three-level reduction applies because Piggott accepted responsibility for his crime. This results in a final offense level of 22. Because he has only one criminal history point, his Criminal History Category is I. Applying the <u>Klear</u> factors to the Sentencing Table, Piggott's sentence

range is 41-to-51 months.  The government, probation, and Piggott agreed that this was the proper outcome under the Klear framework.

### III. ADDITIONAL VARIANCE FOR CASES OUTSIDE THE HEARTLAND

The Klear framework is a variance that recalibrates the heartland case for child pornography.  That, however, does not end the inquiry.  As with any other sentencing, the defendant can present evidence that his case is outside the heartland of cases and warrants an additional variance under 18 U.S.C. § 3553(a).  Piggott argues that his intellectual disability and resulting stunted social development puts his case outside the norm.  The court agrees and varies downward to a sentence of 12-months and one day custody and 12 months of inpatient rehabilitation, with supervised release for life.[4]

---

4.  Although the court sentenced Piggott to lifetime supervised release, it advised the Probation (continued...)

The court varies because it finds Piggott less culpable because of his borderline intellectual functioning. While Piggott is fully competent under the law, he is <u>in many ways like a child</u> in his ability to grasp the consequences of his actions. Indeed, <u>he thinks like a child</u>, as he has an IQ is in the mid-70s and spells, reads, and does math between a 2nd and 4th grade level. He has taken special education since he was young. His education levels are in the bottom 1 % for people his age, and he has documented learning disabilities since a young age.

His developmental disabilities also led him to have <u>the emotional development of a child</u>. He lives at home and is completely dependent upon his parents. He has no friends and his only reported romantic relationships are largely imaginary. He has no job. He is a recluse, spending the average day on the couch, smoking cigarettes, and watching television. The purpose of

---

Department to decide every five years whether Piggott merits early release.

the inpatient treatment is to wean Piggott from dependence on his parents and force his interaction with the outside world.

Although, again, the court finds Piggott fully competent under the law, this is not a heartland case. Piggott is simply not as culpable as someone with anywhere near average intellectual ability or emotional development. This court therefore joins several other courts that when presented with similar facts, granted a significant variance. See United States v. Meillier, 650 F. Supp. 2d 887 (D. Minn. 2009) (Schiltz, J.) (varying from a range of 57-to-71 months to 1 day custody because defendant, with a 70 IQ was, "intellectually speaking, an eleven-and-a-half-year-old boy" and "[n]o court would sentence an eleven-and-a-half-year-old boy to a lengthy term in federal penitentiary for downloading images of other children engaged in sexual activity"); United States v. Rothwell, 847 F. Supp. 2d 1048, 1051-52, 1078 (E.D. Tenn. 2012) (Collier, C.J.) (varying from a range of

14

41-to-51 months to 18-months custody in child pornography case where defendant had IQ of 77, always lived with his parents, read at a third-grade level, and had a limited degree of social awareness).[5]

                    \* \* \*

For all of these reasons, the court finds that the sentence imposed was sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a).

DONE, this the 27th day of April, 2015.

                                        /s/ Myron H. Thompson
                                    UNITED STATES DISTRICT JUDGE

---

5. Both of these cases considered both the problem with heartland cases in general and the specific characteristics of the defendant in deciding on the variance. This court breaks that into a two-step process, using the <u>Klear</u> framework to recalibrate the heartland case and a second step to address factors outside the heartland.